IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALVIN TUCKER,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        CASE NO. 2:11cv268-MEF-WC
                                       )
SEJONG ALABAMA, LLC,                   )
SEJONG GEORGIA, LLC,                   )
                                       )
        Defendants.                    )

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court are Defendants' Motion for Summary Judgment (Doc. #48), Plaintiff's Brief and Amendment in Opposition (Docs. #55 & 57), and Defendants' Reply Brief (Doc. #59). Also pending is Defendants' Motion to Strike (Doc. #60). For the reasons that follow, the undersigned RECOMMENDS that the Motion for Summary Judgment (Doc. #48) be GRANTED. Further, the undersigned finds that Defendants' Motion to Strike (Doc. #60) is due to be DENIED.

## I.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] Only disputes about material facts will preclude the granting of

_____

[1] On December 1, 2010, amendments to Rule 56 became effective. The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK,*

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion.  *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986).  However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute.  *Id.* at 324.  In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory

---

*Inc.*, __ F.3d __, 2011 WL 183969 at *9 n.4 (1st Cir. Jan. 21, 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.  After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

## II.    STATEMENT OF FACTS

The court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, Defendants' Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

3

Sejong Alabama, LLC and Sejong Georgia, LLC are sister corporations, subsidiaries of a Korean corporate parent, who supply component parts to Korean-owned auto manufacturers Hyundai and Kia, and are sometimes referred to as "Tier 1 suppliers" to these manufacturers. Defendants manufacture resonators/mufflers for use in automobiles.

Plaintiff, Alvin Tucker, is an African American male. Plaintiff was hired by Defendant Sejong Alabama, LLC on April 30, 2007 and remained employed until September 2010. Plaintiff was employed as the Human Resources Manager of Defendant Sejong Alabama, LLC. For part of that time, in the year 2009, Plaintiff also held human resources responsibilities for Defendant Sejong Georgia, LLC. Beginning in September of 2009, Plaintiff only held responsibilities for the Alabama facility.

Plaintiff's duties as a Human Resources Manager included securing and overseeing contractors supplying temporary labor services to Defendants' facilities. These contractors included MidSouth Employment Services ("MidSouth") and A2D2 Enterprises ("A2D2"). A2D2 was established in June 2007. A2D2 began providing temporary labor services to Defendants sometime in late 2007. Plaintiff has owned a fifty percent ownership interest in A2D2 since it was established in 2007. As of the date this lawsuit was started, Plaintiff still owns a fifty percent ownership interest in A2D2.

In July 2009, Plaintiff awarded separate temporary labor contracts to A2D2 and MidSouth. MidSouth was awarded a one-year contract. A2D2 was awarded a five year contract.

On October 1, 2009, Plaintiff filed three separate internal grievances with Defendants regarding alleged discriminatory conduct that occurred in July, August, and September of 2009.  Plaintiff filed the October 1, 2009 grievances by submitting them to Shawn Nelson, Assistant Human Resources Manager.  On March 23, 2010, Plaintiff filed another internal complaint alleging that African Americans are treated less favorably than Koreans and Caucasian Americans in their terms and conditions of employment and alleging that his efforts to address and correct this "disparate treatment" were overruled by H.S. Kim, CEO of Sejong Alabama, LLC and Sejong Georgia, LLC ("Kim").

In March 2010, Plaintiff received a three percent salary increase.

On April 22, 2010, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on race, color, retaliation, age and a hostile work environment.  In his EEOC charge, Plaintiff references the two internal complaints he filed with Defendants and which he alleges were not resolved.

Plaintiff's employment was terminated on September 3, 2010.  On September 14, 2010, Plaintiff filed a second Charge of Discrimination with the EEOC alleging that he was discharged in retaliation for filing his April 2010 charge of discrimination with the EEOC.

In October 2010, Plaintiff testified at a hearing before the National Labor Relations Board ("NLRB") and denied having an ownership interest in A2D2.

## III.   DISCUSSION

### A.   Title VII and Section 1981 Claims

5

Plaintiff's Complaint alleges discrimination based on race and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.[2]  Plaintiff has not provided direct evidence that discrimination was the reason for his adverse employment action nor has he proffered statistical evidence or evidence of a pattern of discrimination in this case.  Because Plaintiff's race discrimination and retaliation claims rely on circumstantial evidence, they are analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

### 1.    Disparate Treatment Race Discrimination Claim

Under the *McDonnell Douglas* framework, Plaintiff must first create a presumption of discrimination by establishing a *prima facie* case.  *McDonnell Douglas*, 411 U.S. at 802.  Plaintiff may establish a *prima facie* case of discrimination through circumstantial evidence by proving that:  (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994)).  Regarding the third prong of the inquiry,

---

[2] Plaintiff brings suit under both Title VII and Section 1981.  The legal analysis is the same under both statutes.  *See Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009) (noting that discrimination claims brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework).

"[t]he plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects.  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (internal quotation omitted).

If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  Defendants' burden is "exceedingly light" and Defendants must merely proffer a non-race based reason for Plaintiff's termination, not prove it.  *Meeks v. Computer Assocs Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).  Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

### a.   Salary Claim

Plaintiff alleges that "Defendant discriminated against [him] in pay, by demoting him, disciplining him, discharging him, and other terms and conditions of his employment."  Am. Compl. (Doc. #13) at 6.  In particular, Plaintiff alleges that in August 2008, Kim verbally promised him a salary increase to begin in 2009, but that he never received the increase in salary.  Am. Compl. (Doc. #13) at 2.  Plaintiff also appears to allege he was promised an expansion of his role to include responsibility over facilities in both Alabama and Georgia,

as well as a promotion to Plant Manager.[3]

Defendants argue that Plaintiff cannot establish he was treated less favorably with respect to his salary increase because he failed to identify a pay comparator. Defendants contend, and Plaintiff admits, Plaintiff's salary was $65,000 at the time of hiring and that he received a three percent salary increase in March 2010.[4] Defendants argue that Plaintiff has

---

[3] At his deposition, Plaintiff testified as follows:

> Q: So let me understand what you're saying though about those conversations. You believe that Mr. Kim was telling you one thing behind closed doors and telling Mr. Morgan another thing about what he wanted your responsibilities to be. Am I understanding that correctly?
> A: Yes, sir.
> Q: All right. How do you relate that to discrimination under Title VII?
> A: For one thing, money was being mentioned so it was pay discrimination. He had told me that I would be over both plants, and due to my loyalties to the company and the things that I have accomplished with both plants that he would have me over both plants reporting directly to him was his plans. That was between January and March.
> Q: Of 2010?
> A: Of 2010. But prior to that, before Charlie was made the plant manager, Mr. Kim wanted to meet with my wife and I to discuss – he asked me had I ever been plant manager, and I said no, and he wanted to meet with the two of us over dinner to discuss that. We never got to that particular meeting. Of course, everything ended and I was no longer down there. And so anyway, Charlie ended up being the plant manager for the site. He mentioned – he asked me that. Now we never had that conversation in detail about me being the plant manager, but he did suggest that.

Tucker Depo. (Doc. #50-1) at 48-49.

[4] At his deposition, Plaintiff testified as follows:
> Q: . . . After you were relieved of responsibility for the human resources in Georgia, did your salary go down?
> A: No.

failed to identify a similarly situated comparator who received a higher salary. Defs.' Brief (Doc. #49) at 5.  Plaintiff identified the following individuals as his comparators:  Vickie Porter (white; Senior Manager, Comptroller), Dale Beach (white; Quality Manager), Ben Huguley (white; Production Manager), and Todd Wilson (white; Engineering Supervisor/Manager). Tucker Depo. (Doc. #50-1) at 90.  Plaintiff testified that each of these individuals was paid a higher salary, however, Plaintiff fails to present evidence that he is similarly situated to these individuals.  Indeed, none of these individuals was in the same position as Plaintiff.  As Defendants argue,

> Ms. Porter's title places her one level of management above Plaintiff's, and her comptroller role is so clearly distinct from his human resources role as to make any comparison futile.  Likewise, Mr. Beach (quality control), Mr. Huguley (production), and Mr. Wilson (engineering) each carry out roles so dissimilar to Human Resources as to disqualify them as comparators. . . . Plaintiff testified that he should have made a much higher salary than any of his alleged comparators, $110,000 to their $70-80,000. (Tucker, pp. 90-97.) This fact

---

Q: Did it ever go up?
A: It went up in March.
Q: Of 2010?
A: Of 2010.  They gave a raise that was supposed to be a three percent across the board, but paperwork somehow – I'm not sure how I got the paperwork, but found out there was a spreadsheet . . .
Q:  What did your salary go up to in March 2010?
A: It was three percent of – it went up three percent.  I don't know what that – maybe ended up being like 66 I think.  I'm not sure.
Q: So you got a three percent increase in March of 2010?
A: Yes.
Q: Did you ever get any salary increases during the remainder of your time at Sejong?
A: No.
Q: But you never got any salary decreases?
A: No.

Tucker Depo. (Doc. #50-1) at 51-52.

standing alone, refutes Plaintiff's claim that they are his comparators: Plaintiff
cannot be similarly situated to managers he claims should be paid 30% less.

Defs.' Reply (Doc. #59) at 7.  The court agrees.  Plaintiff has failed to establish that the roles

and responsibilities of his comparators were the same.  Plaintiff simply asserts "Tucker was

qualified for the position and his work in the position clearly showed that he was entitled to

an increase in his salary."  Pl's Resp. (Doc. #55) at 11.  Moreover, when asked "What is it

about your pay, your salary, that you contend was discriminatory?" Plaintiff indicated, "Well,

being over both plants for the amount of time and then being in discussion that I would

actually take over those responsibilities again."  Tucker Depo. (Doc. #50-1) at 52-53.  Thus,

Plaintiff is essentially arguing that he should have gotten a pay raise for a promotion he never

received.

Taking all of the facts set forth in Plaintiff's response as true and in the light most

favorable to Plaintiff, the evidence before the court would not permit a reasonable inference

that Defendants failed to give Plaintiff a pay increase because of his race.[5]  Plaintiff has not

produced evidence that any similarly situated comparator of a different race was treated more

favorably with regard to pay increases, and has produced no other evidence sufficient to

permit an inference of discrimination.[6]  Accordingly, Defendants are entitled to summary

---

[5] To the extent Plaintiff seeks to argue he did not receive a pay increase due to retaliation,
this argument is due to fail.  Plaintiff received a three percent salary increase *after* having filed
internal complaints, thereby negating any inference of retaliation by Defendants with respect to
Plaintiff's salary.

[6] Plaintiff indicates that in March 2010 Defendants provided a 3 percent raise to
employees across the board.  However, Plaintiff identifies two Korean employees who received a
7.5 percent raise: Shin Jeong (Development Specialist), and Kyu Lim (IT Engineer).  Pl.'s

judgment on Plaintiff's salary claim.  *See Newman v. Career Consultants, Inc.*, 470 F. Supp. 2d 1333, 1348 (M.D. Ala. 2007) (granting summary judgment because Plaintiff "d[id] not attempt to identify a *similarly-situated* employee outside the protected class who received raises while she did not") (emphasis added).

### b.      Failure to Promote Claim

To the extent Plaintiff alleges a failure to promote claim based on the alleged verbal promise he received from Kim, summary judgment is due to be granted as to this claim.  To meet his burden of showing a *prima facie* case of discriminatory failure to promote, Plaintiff must establish that:

> (1) he is a member of a protected minority; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted.

*Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000).  The court finds that Plaintiff has not met his burden.  Plaintiff's evidence consists of his own self-serving testimony that Kim expressed a desire to expand Plaintiff's role and make Plaintiff plant

---

Evidentiary Submission, Ex. C (Doc. #71-3) at 2-3.  The problem for Plaintiff is that he fails to establish that these three employees are his comparators.  Moreover, Plaintiff's evidentiary submission also includes evidence that at least one Korean employee, Danny Kim (job title unknown), received the same across the board three percent raise.  Pl.'s Evidentiary Submission, Ex. C (Doc. #71-3) at 1.  Moreover, Wilson Kim (Quality Engineer) received no increase in salary when he was promoted in July 2009.  Pl.'s Evidentiary Submission, Ex. B (Doc. #71-2). This evidence rebuts any inference that the two 7.5 percent salary increases were awarded because of the employees' race.

manager.  However, Plaintiff fails to present any evidence that this offer was ever made.[7]

Plaintiff has not demonstrated that he applied for a promotion and was rejected, or that other

equally or less qualified members of a different race were promoted over him.  Accordingly,

this claim is due to fail.

### 2.    Retaliation

Plaintiff's Amended Complaint alleges that "[he] engaged in protected activity by

opposing discrimination by filing an EEOC Charge alleging discrimination against

Defendant[s]" and that "[i]n response to Plaintiff objecting to discrimination and filing an

EEOC Charge, Defendant[s] retaliated against Plaintiff by denying him overtime, demoting

him and terminating him."  Am. Compl. (Doc. #13) at 7.  While the Amended Complaint

alleges retaliation in denial of overtime and demotion, Plaintiff's response to Defendants'

motion for summary judgment simply argues "Tucker was an 'aggrieved person' under this

[Title VII] standard, the court of appeals explained, since '(1) *he suffered an injury-in-fact*

*(termination of his employment)*, (2) as a result of [Defendants'] putatively illegal conduct,

and (3) it is possible, instead of merely speculative, and that his injury is redressable.'" Pl.'s

Resp. (Doc. #55) at 13 (emphasis added).  Plaintiff's response addresses only his allegation

---

[7] At his deposition, Plaintiff testified that "before Charlie was made the plant manager, Mr. Kim wanted to meet with my wife and I to discuss – he asked me had I ever been plant manager, and I said no, and he wanted to meet with the two of us over dinner to discuss that.  We never got to that particular meeting.  Of course, everything ended and I was no longer down there.  And so anyway, Charlie ended up being the plant manager for the site.  He mentioned – he asked me that.  Now we never had that conversation in detail about me being the plant manager, but he did suggest that." Tucker Depo. (Doc. #50-1) at 48-49.

that he suffered retaliation when he was terminated from his employment.  Thus, Plaintiff has abandoned all of his retaliation claims excepting retaliatory discharge and this court will not consider claims that he suffered retaliation in denial of overtime or demotion.[8]

Defendants move for summary judgment arguing that Plaintiff's conflict of interest in holding an ownership interest in A2D2 while serving as a Human Resources Manager "clearly negates any inference of retaliatory motive."  Defs.' Brief (Doc. #49) at 10. Defendants add, "It is emphatically not retaliation for an employer to discharge a subordinate for secretly maintaining a business relationship contrary to his employer's interest, a relationship so clearly in conflict with his managerial duties as to constitute a material breach of his fiduciary responsibility to Sejong."  Defs.' Brief (Doc. #49) at 10.

### a.   *Prima Facie*

---

[8] *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned, and affirming grant of summary judgment, as to claim presented in complaint but not raised in initial response to motion for summary judgment); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding claim abandoned where it was not briefed and argued in district court in party's response to motion for summary judgment or in party's own motion for summary judgment).  *See also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 898 (11th Cir. 1999) (affirming "the unremarkable position that assertions made in the pleadings (*e.g.,* complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment."); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  Accordingly, and upon consideration of these precedents, the court finds that Plaintiff has abandoned his non-termination retaliation claims due to his failure to address these claims or otherwise provide support for them in his response to the motion for summary judgment.

As with discrimination claims predicated on Title VII and § 1981, the elements required to establish a retaliation claim under both Title VII and § 1981 are the same. *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008).  In order to demonstrate a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in statutorily protected expression; (2) his employer took a materially adverse action against him; and (3) some causal relationship existed between the two events.  *See Holifield*, 115 F.3d at 1566; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-67 (2006). Protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure.  *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998) (filing EEOC complaint is protected conduct); *Rollins v. Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (internal complaints of discrimination are statutorily protected conduct).  Plaintiff has satisfied the first two elements of his *prima facie* case.  Plaintiff engaged in statutorily protected activity when he filed internal grievances with Defendants in October 2009 and March 2010 as well as when he filed a Charge of Discrimination with the EEOC in April 2010.  Moreover, Plaintiff's September 3, 2010 termination is an adverse employment action.  As to the third element of the *prima facie* case of retaliation, Plaintiff bears the burden of establishing a causal link between his protected activity – his grievances and the filing of his charge of discrimination – and his subsequent termination.

To the extent Plaintiff seeks to argue a causal link exists because his September 2010

termination occurred after his internal and EEOC complaints, this argument lacks merit.  The Eleventh Circuit has held that in proving a causal connection, a plaintiff need only to demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total System Servs.*, 176 F.3d 1346, 1354 (11th Cir. 1999).  Plaintiff can satisfy this element if he "provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action."  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (citing *Clover*, 176 F.3d at 1354).  However, the Supreme Court has stated that "mere temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations omitted) (citing and approving of *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997) (finding three month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (finding four month period insufficient)).  "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  The *Thomas* court cited to *Clark* and held that a three month period, without more, does not rise to the level of "very close." *Id.*

In this case, in opposing summary judgment, Plaintiff did not present evidence from

which a reasonable jury could find any causal connection between the internal grievances he filed in October 2009 and March 2010 or his April 2010 charge of discrimination and his September 2010 termination.  Indeed, while the court assumes Defendants had knowledge of the internal grievances,[9] his September 2010 termination is too far removed to establish an inference of retaliation as it occurred almost a year after Plaintiff filed the October 2009 grievances and, in the alternative, occurred six months after Plaintiff filed the March 2010 grievance.  *See Clark*, 532 U.S. at 273 (three and four month period not close enough).[10]  As to his April 2010 EEOC charge, Plaintiff failed to establish that Defendants were aware he had filed the charge of discrimination prior to his September 2010 termination.  "In order to satisfy the 'causal link' prong of a prima facie retaliation case, [plaintiff] must, at a minimum, generally establish that the defendant was actually aware of the protected

---

[9]  Because these were internal grievances, the court concludes Defendants received notice of these complaints on the date they were filed.

[10]  The court also notes that Plaintiff received a three percent raise in March 2010, which breaks any causal chain between his internal grievances, filed in the fall of 2009 and March of 2010, and his September 2010 termination.  *See, e.g.*, *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 32-33 (1st Cir. 2007) (finding that "positive developments [such as a more favorable performance review in the year after plaintiff filed a grievance and a salary increase] cut against any plausible inference of retaliation"); *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 101 (1st Cir.2007) (finding interim salary increase and improved performance review, among other facts, sufficient to break causal chain as to retaliation claim); *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756, 759 (5th Cir. 1980) (finding no age discrimination when employee was promoted just days before being discharged for violating company policies).

To the extent Plaintiff attempts to argue he should have received a higher than three percent raise, this argument is also due to fail. *See, e.g.*, *Murphy v. Yellow Freight System, Inc.*, 832 F. Supp. 1543, 1550 (N.D. Ga. 1993) ("The simple fact that Plaintiff did not receive as high a raise as she feels she is worth, although it was the same or higher than other employees, does not constitute an 'adverse employment action.'").

16

expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997); *Embry v. Callahan Eye Found. Hospital*, 147 F. App'x 819, 831 (11th Cir. 2005). Even assuming that Defendants did have knowledge of the EEOC charge, however, absent other evidence of a causal link between the April 2010 EEOC charge and Plaintiff's September 2010 termination, the temporal proximity between the two is not close enough to constitute sufficient evidence of causality. *See Higdon v. Jackson*, 393 F.3d 1211 (11th Cir. 2004). Thus, Plaintiff fails to establish a *prima facie* case.[11]

> **b.      Pretext**

Even if the court assumes Plaintiff has established a *prima facie* case, Defendants have articulated a legitimate, nondiscriminatory reason for discharging Plaintiff. Defendants assert Plaintiff was terminated due to his undisclosed ownership interest in A2D2, a company

---

[11] Plaintiff filed another charge of discrimination with the EEOC on September 14, 2010, following his termination. To the extent Plaintiff includes this charge in his retaliation claim, this argument is due to fail. The charge was filed after Plaintiff was terminated and Plaintiff has failed to establish that Defendants were aware that he would file a charge of discrimination when it reached its decision to terminate. *See, e.g., Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000) (affirming summary judgment to employer on Title VII retaliation claim because no "causal link" possible where employee's protected expression occurred after adverse action).

Even assuming Defendants did have knowledge of Plaintiff's intent to file a charge, this too, alone, is not enough to establish a causal link. *See, e.g., Knights v. Bank United of Texas Federal Sav. Bank*, 192 F.3d 127, 1999 WL 684160, at *6 (5th Cir. 1999) ("Mere knowledge of possible protected activity is not enough to raise a fact issue on the necessary causal link for a retaliation claim."); *Robinson v. AFA Service Corp.*, 870 F. Supp. 1077, 1085, N.D. Ga. 1994) ("Even though Defendant knew at the time of discharge that Plaintiff might pursue an age discrimination claim, this circuit does not hold that the employer's mere knowledge of a potential discrimination charge is enough." (citing *Mesnick v. General Elec. Co.*, 950 F.2d 816 (1st Cir. 1991))).

which provided temporary labor services to Defendants, at the same time Plaintiff served as Human Resources Manager for Defendants.   According to Defendants, this ownership interest resulted in a conflict of interest.  Defendants indicate they discovered Plaintiff's ownership interest in A2D2 sometime in the summer of 2010.  Todd Morgan Decl. (Doc. #52-1) at 3.  Once Defendants proffer a non-discriminatory reason for Plaintiff's termination, Plaintiff "then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).

In meeting that burden, Plaintiff makes two arguments:  1) that he previously disclosed his ownership interest in A2D2 to Defendants, and 2) that other employees, Koreans, had the same conflict of interest of which he is accused.  As to his first argument, Plaintiff indicates that Kim was aware of Plaintiff's ownership interest in A2D2, stating that:

> In April 2010, Tucker disclosed his ownership interest in A2D2 Enterprises, LLC to HS Kim who did not express any objection to [Tucker] at the time of the disclosure and in fact he [Kim] told [Tucker] that because [Tucker's] wife had an ownership interest in the company, it was in effect in line with the 'Korean Way' (Tucker's affidavit ¶8).  It is interesting that Sejong did not immediate [sic] terminate Tucker's employment after Tucker informed HS Kim of the ownership interest in A2D2 but used his ownership interest as a pretext for his termination after Tucker filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

Pl.'s Resp. (Doc. #55) at 18.  Plaintiff also indicates that he presented his immediate supervisor, Todd Morgan, with a corporate document from A2D2, which revealed his stake in the company.  Pl's Resp. (Doc. #55) at 15.  Todd Morgan denies Plaintiff ever disclosed

his ownership[12] and Defendants contend that "Morgan's declaration establishes that Sejong had to uncover [Plaintiff's ownership interest in A2D2] on its own" and points out that "Mr. Morgan's contemporaneous notes from his investigation of one of Plaintiff's grievances reflect that he asked the question directly, and Plaintiff denied it."  Def.'s Reply (Doc. #59) at 4 (internal citations omitted).  *See also* T. Morgan's Investigation Notes, Defs.' Ex. C-1 (Doc. #52-1) at 32.  Plaintiff's only evidence of having disclosed his ownership to Kim and Todd Morgan is his own self-serving declaration and testimony, while Defendants have presented evidence that it had to uncover Plaintiff's ownership on its own.  The court also

---

[12] Morgan's declaration indicates:

> 6.      In late summer 2010, Sejong management discovered that Mr. Tucker had awarded separate contracts to MidSouth and A2D2.  The MidSouth contract was for a one year term and recited standard provisions for termination. (Exhibit 2)  The A2D2 contract was for a five year term and provided no terms for termination, making it essentially interminable by Sejong.  (Exhibit 3)

> 7.      Prior to discovering the two different contracts, Sejong management had conducted some research on the website on the Secretary of State of Alabama. Although some had speculated, we discovered for the first time that Mr. Tucker had a co-ownership interest in A2D2.  Earlier in the year in connection with an investigation of a grievance filed by Mr. Tucker I specifically asked him whether he owned any financial interest in A2D2.  He denied it.  I recorded his denial in my investigation notes.  (Exhibit 4)

> . . .

> 9.      Upon the discovery of Mr. Tucker's financial interest in A2D2 – which Sejong considered to be a conflict of interest – the decision was made to terminate his employment. The decision was jointly made among Sejong senior management, in which I participated.  (Exhibit 5)

Todd Morgan Decl. (Doc. #52-1) at 3.

notes that while Plaintiff indicates he had previously disclosed his business interest in A2D2,

on September 28, 2010, during a hearing before the NLRB, Plaintiff denied being an owner

of A2D2 – false testimony he admitted and recanted during his deposition in September 2011

when he admitted he still owns a fifty percent interest in the company.[13]  The court finds that

this conflicting evidence is insufficient for Plaintiff to carry his "ultimate burden of proving

the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d

1172, 1183 (11th Cir. 2001).   Plaintiff has failed to identify "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could find them unworthy of

credence." *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir.

---

[13] At his deposition, Plaintiff testified as follows:
> Q: Do you remember testifying before the National Labor
> Relations Board in September of 2010 that you had no ownership
> interest in A2D2?
> A: I remember yes.
> Q: Did you testify falsely?
> A: Due to conversations previously with Mr. Kim, I did testify
> falsely.
> . . .
> Q: Why did you testify falsely under oath in that hearing?
> A: Well, intimidation, and then I'd had meetings with Mr. Kim
> previously pertaining to my ownership and that he stated it wasn't
> Todd Morgan's business.
> . . .
> Q: Now you testified earlier that you own a 50 percent interest in
> A2D2, correct?
> A: Correct.
> Q: And that you own the 50 percent interest even today?
> A: Correct.

Tucker Depo. (Doc. #50-1) at 154-56; 172-73.

1997) (quotation omitted).

Plaintiff also argues that Defendants' articulated reason for his termination is a pretext for retaliation/discrimination because other employees also had a conflict of interest and were not terminated.  Plaintiff identifies Jay Kwon, a Korean manager at Sejong, whom  Plaintiff asserts held a financial interest MidSouth – one of the vendors used by Defendants. However, Plaintiff presents no evidence in support of his assertion that Kwon held a financial interest in MidSouth.  Indeed, Plaintiff admitted he had no evidence of such.[14]   Further, Plaintiff fails to allege that Kwon was in a position to award contracts to MidSouth. Whereas, Plaintiff was in the position to, and did, award contracts to the company in which he held a financial interest.  Thus, Plaintiff has failed to establish that Defendants tolerated

---

[14] At his deposition, Plaintiff testified as follows:

> Q: I want to talk about A2D2 and MidSouth, Mr. Tucker.  We had some conversation a little bit ago and you testified that you had an ownership interest in A2D2.  And to the best of your knowledge, Jay Kwon had no ownership interest in MidSouth but you thought that he and the MidSouth guy were friends.  Did I get that correct?
> A: Say that last part again.
> Q: You thought that Jay Kwon and the MidSouth guy were friends?
> A: And that they had some financial interest.
> Q: Right.  But I asked you if you had any evidence that they had some financial dealings and you told me that you did not.
> A: I don't have evidence.
> Q: Okay.  But there's no dispute that you have a financial interest – you had a financial interest in A2D2?
> A: That's correct.
> Q: And according to your tax returns, you were receiving income from A2D2 all the way through 2010?
> A: That's correct.

Tucker Depo. (Doc. #50-1) at 144-45.

conflicts of interest in other employees and that their proffered reason for termination was pretext.  Accordingly, Defendants are entitled to summary judgment on this issue.

### B.      Tort Claims Under Alabama Law

#### 1.      Intentional Infliction of Emotional Distress

To establish intentional infliction of emotional distress, also known as the tort of outrage, under Alabama law, Plaintiff must demonstrate "that [Defendants'] conduct was '(1) intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993)).  This tort "does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d).  The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Id.* (citing Restatement (Second) of Torts § 46 cmt. d).  The Supreme Court of Alabama has "strictly" applied the requirement that both the conduct complained of and the emotional distress caused by it must be extreme.  *Saville v. Houston Cnty. Healthcare Auth.*, 852 F. Supp. 1512, 1541 (M.D. Ala. 1994) (citations omitted).  Thus, "[o]utrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas*, 624 So. 2d at 1044 (Ala. 1993) (citing nineteen cases for support that the Supreme Court of Alabama "has held in a

large majority of the outrage cases that no jury question was presented"). Indeed, the Supreme Court of Alabama has allowed claims of outrage only in three limited circumstances: "cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment." *Carter v. Harris*, 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999).

In moving for summary judgment, Defendants argue, "[o]ften alleged but rarely seen, it is to Sejong's knowledge a tort never found in an employment relationship. It clearly has no application to these facts." Def.'s Brief (Doc. 49) at 11. The court agrees. In this case, Plaintiff's claims do not fall within the three limited circumstances recognized by the Supreme Court of Alabama for the tort of outrage. Plaintiff has also failed to demonstrate that Defendants' conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Harrelson*, 882 So. 2d at 322. Furthermore, Plaintiff has failed to put forth sufficient evidence demonstrating severe emotional distress, as required under Alabama law. *Saville*, 852 F. Supp. at 1541; *see also Continental Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1211 (Ala. 1990) ("The emotional distress must be so severe that no reasonable person could be expected to endure it."). Plaintiff indicates that "[t]he atmosphere created by the manager of Sejong who engaged in intimidation, nepotism, clearly can lead a reasonable person to conclude that management was engaged in wrongful acts to the

detriment of Tucker." Pl.'s Resp. (Doc. #55) at 19. Plaintiff alleges Defendants' actions required him to administer terminations of employees who were terminated after receiving too many tardy points. Second Am. Compl. (Doc. #24) at 1. The fact that he was required to discharge employees as part of his duties as a Human Resources Manager is not sufficient to demonstrate "severe" emotional distress.

Thus, Defendants' motion for summary judgment is due to be granted as to Plaintiff's tort of outrage claims.

### 2.    Negligent Supervision

Plaintiff also alleges a claim for negligent supervision. Specifically, Plaintiff seems to allege that:

> Plaintiff became aware and complained that management had intentionally forged his name on immigration paperwork breaching management's fiduciary responsibility to the Defendants and Plaintiff, through negligent supervision, allowing intentional infliction of emotional distress to Plaintiff, yet Defendants allowed person in management to continue to be employed.

> Plaintiff became aware and complained that management was aware of Defendants discriminating against him, yet Plaintiff's immediate supervisor breached his fiduciary responsibility of care to employee and Defendant, through negligent supervision, allowing intentional infliction of emotional distress to Plaintiff, yet Defendants allowed person in management to continue to be employed.

Second Am. Compl. (Doc. #24) at 2. In moving for summary judgment, Defendants argue, "'[n]egligent supervision' is a tort first recognized by Alabama's courts in the case of *Big B v. Cottingham*, 634 So. 2d 999 (Ala. 1993), which assessed liability on an employer for the wrongful acts of one of its managers against a member of the public. No such scenario is

presented here, and Plaintiff cannot even identify what 'incompetent' acts of his managers he alleges caused him to suffer recoverable injury."  Def.'s Brief (Doc. #49) at 11.

Under Alabama law, "[a] party alleging negligent or wanton hiring, supervision, training, and retention must prove the underlying wrongful conduct of employees." *Thornton*, 2008 WL 5328492 at *19 (citing *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003)).  The underlying wrongful conduct must constitute "'a common-law, Alabama tort' committed by the employee, not on a federal cause of action such as Title VII." *Ellis v. Advanced Tech. Servs.*, 2010 WL 3526169, at *2 (M.D. Ala. Sep. 3, 2010) (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002)); *Rabb v. Georgia Pacific, LLC*, 2010 WL 2985575, at *16 (S.D. Ala. July 26, 2010) ("Because Alabama does not recognize a common-law tort for race discrimination in employment, this Court finds that [the plaintiff] cannot maintain an action for negligent supervision based on conduct that is employment discrimination, but does not support a common law tort.").  Accordingly, to the extent Plaintiff's negligent supervision claim is based on any of his Title VII claims, *i.e.*, that any employee supervised by Defendants discriminated against Plaintiff or allowed discrimination to take place, and thereby caused an injury to Plaintiff, Defendants' motion for summary judgment is due to be granted.

To the extent Plaintiff's negligent supervision claim is based on his state law claim of intentional infliction of emotional distress, Defendants' motion for summary judgment is also due to be granted.  As discussed above, Defendants are entitled to summary judgment

on Plaintiff's state-law claims for intentional infliction of emotional distress.  Plaintiff has

alleged no other state-law tort claims.  Thus, Defendants' motion for summary judgment is

due to be granted as to Plaintiff's claims for negligent supervision.

## IV.    Defendants' Motion to Strike

Defendants have also moved to strike portions of Plaintiff's Evidentiary Submission.

Specifically, Defendants move to strike the declaration of Daniel Dixon and the letter of

Daniel Dixon to the EEOC (Items 7 & 10 of Plaintiff's Evidentiary Submission).

The court did consider all of Plaintiff's evidentiary submissions, as reflected in this

recommendation, and therefore Defendants' motion is hereby denied.

## V.    CONCLUSION

For the reasons stated above, it is

ORDERED that Defendants' Motion to Strike (Doc. #60) is DENIED.

It is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion for

Summary Judgment (Doc. #48) be GRANTED and this case be dismissed.

It is further

ORDERED that on or before **May 18, 2012**, the parties may file objections to the

Recommendation.   Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or

general objections will not be considered by the District Court.  The parties are advised that

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 4th day of May, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

27